IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GABRIEL ANTONE EBERHARDT,<br><br>Defendant. | CR. NO. 21-00101 JAO<br><br>**ORDER DENYING DEFENDANT EBERHARDT'S VARIOUS MOTIONS (ECF NOS. 358, 359, 360, 366)** |

**ORDER DENYING DEFENDANT EBERHARDT'S VARIOUS MOTIONS (ECF NOS. 358, 359, 360, 366)**

Before the Court are four Motions filed by Defendant Gabriel Antone Eberhardt:  (1) Motion to Dismiss and Request for Evidentiary Hearing as to Count 2 of the Fourth Superseding Indictment or Alternatively This [sic] Court Direct the Government to File a Bill of Particulars Regarding This Count ("Motion to Dismiss"), ECF No. 368; (2) Motion to Suppress and Exclude Evidence, and Request for Evidentiary Hearing ("Suppression Motion"), ECF No. 359; (3) Defendant's Motion to Sever, ECF No. 360; and (4) and Defendant's Amended Motion to Sever, ECF No. 366 ("Motion to Sever") (collectively, "Motions").  For the following reasons, the Court DENIES the Motions.

## I.     BACKGROUND

### A.     Facts

Eberhardt is pending trial on multiple drug and firearm counts.  As part of the investigation into this case, on June 29, 2021, law enforcement obtained search warrants for various locations, including three at issue here:  a Central Self Storage Unit ("Storage Unit"), a residence at 1296 Kapiolani Apartment 2309 ("Kapiolani Residence"), and a residence at 1765 Ala Moana Boulevard Unit 993 ("Ala Moana Residence"), collectively, "Locations."  ECF No. 359 at 1-2; ECF No. 371 at 8.  The same affidavit was sworn on for all three search warrants.  *See* ECF No. 371 at 8.  The affidavit offered the following details.

The investigation into the drug trafficking organization in which Eberhardt was a co-conspirator started in February of 2020 and involved a variety of investigative efforts.  *See* ECF No. 359-1[1] at 12.  Those efforts revealed that Eberhardt "was identified . . . as an operational leader of the D[rug] T[rafficking]

---

[1] Curiously, Eberhardt only attached two search warrant applications to the Suppression Motion: one for the Storage Unit and one for the Ala Moana Residence.  *See* ECF Nos. 359-1 and 359-2.  And, in both instances, he did not seal the attachments (the search warrant affidavit and search warrants), despite the fact that they remained sealed in the public record.  *See*, *e.g.*, *In the Matter of the Search of: Storage Unit #4097at Central Self Storage, 46-004 Kawa Street, Kaneohe, Hawaii 96744*, 21-mj-00815-RT (D. Haw.), ECF No. 2.  They have since been unsealed.  *See*, *e.g.*, *id*, ECF No. 4.  In any event, for ease, the Court refers to just one of the affidavits submitted here as they are all identical.  *See* ECF No. 371 at 8.

O[rganization ("DTO")]." *Id.* at 16. On May 20, 2021, an undercover officer contacted Eberhardt on his cellular telephone and agreed to meet with Eberhardt at a shopping center parking lot in order to purchase "Ghan" from him. *Id.* at 16–17. Surveillance officers witnessed Eberhardt seated in the front passenger seat of a black sedan at the shopping center, and watched as a woman got out of the back seat of the sedan and sold the undercover officer what turned out to be nearly 55 grams of fentanyl in exchange for $6,000. *Id.* at 17.

Less than two weeks later, the undercover officer again negotiated with Eberhardt for the purchase of drugs, this time methamphetamine. *Id.* Surveillance officers saw a man, later identified as co-defendant Isaiah Marks, meet with the undercover and sell the undercover eight ounces of what later proved to be methamphetamine in exchange for $3,000. *Id.* Surveillance officers then saw Marks meet with Eberhardt in front of a store, and the two men left in the same black sedan Eberhardt was seen in during prior surveillance. *Id.* at 18.

On June 7, 2021, the undercover officer exchanged text messages with Jennifer Ashcraft, a co-conspirator from whom the undercover had previously purchased fentanyl pills (which purported to be oxycodone pills) and methamphetamine. *Id.* at 16, 18. During this communication, the two agreed that the undercover officer would again purchase oxycodone pills, and Ashcraft indicated she would send a woman named Kai to make the delivery. *Id.* at 18. The

undercover officer went to the location agreed upon by Ashcraft, and saw two women arrive in a black BMW. *Id*. at 18. The officer purchased pills that contained fentanyl from the woman in the passenger seat of the BMW. *Id*. The pills closely resembled pills previously purchased from Ashcraft, and contained fentanyl. *Id*. at 18-19.

Immediately following this transaction, surveillance followed the BMW and watched as a female passenger got out of the car near an apartment building. *Id*. at 19. Information from the U.S. Postal Inspection Service revealed that Ashcraft received mail at that building. *Id*. Thereafter, the BMW left the building and was stopped by police. *Id*. The driver of the BMW was identified as Zakiyyah Mareus, who provided her address as the Ala Moana Residence. *Id*.

One week later, on June 14, 2021, the undercover officer contacted Eberhardt via cellular telephone to purchase "Gray Death" at a shopping center parking lot. *Id*. at 20. Marks met with the undercover in the undercover's vehicle, which was parked in the parking lot. *Id*. Marks gave the undercover 100 grams of what was later determined to be fentanyl, in exchange for $10,000. *Id*. When the undercover officer asked Marks what made Gray Death stronger, Marks referred to Eberhardt as the "chef" who had "different recipes." *Id*. After the transaction, Marks entered the rear passenger door of a black sedan occupied by Eberhardt. *Id*. Immediately thereafter, the black sedan dropped off Marks in Waikiki, and

parked—with Eberhardt in the front passenger seat—in front of the building housing the Ala Moana Residence.  *Id*. at 21.  The black sedan then traveled to the parking structure at the Kapiolani Residence where it parked in a stall and Eberhardt and two others went into the building.  *Id*.  The property manager for the Kapiolani Residence building reported that the stall belonged to the Kapiolani Residence and is assigned to "Gabriel Antone," which is Eberhardt's first and middle names, and his alias.  *Id*. at 22.

A half hour later, the black sedan left the Kapiolani Residence parking structure with Eberhardt as the front passenger.  *Id*.  The car drove to the Storage Unit complex, where Eberhardt entered an exterior gate code, and the black sedan drove into the secured area of the Storage Unit complex.  *Id*. at 21–22.

The staff of the Storage Unit complex told law enforcement that, on June 15, 2021, the Storage Unit belonged to Mareus, and that, when Eberhardt entered the facility on June 14, 2021, he used Mareus' entrance code.  *Id*.  Video cameras at the Storage Unit complex showed Eberhardt removing two bags from the black sedan that day, taking them via elevator to the same floor as the Storage Unit, walking in the direction of the Storage Unit, returning two minutes later to the elevator without any bags, and then leaving in the black sedan.  *Id*.  at 22–23.

During the course of the investigation, law enforcement discerned a connection between this DTO and one based out of Philadelphia, Pennsylvania.  *Id*.

at 23.  Among other things, law enforcement executed a search warrant on a parcel that was sent from Philadelphia in mid-September 2020 to a known address for Eberhardt, containing approximately two kilograms of fentanyl and heroin.  *Id*. at 23–24.  While the parcel was in transit, a cellular telephone associated with Eberhardt communicated 20 times with a cellular telephone belonging to a member of a Philadelphia drug trafficking group ("the Member").  *Id*.  A phone number used to call the post office about the status of the parcel returned to a number that had contact with phones belonging to Eberhardt and Ashcraft, among others.  *Id*. at 24.  On March 30, 2021, the Ala Moana residence received a package from Philadelphia, addressed to "Zaya Malachi," and weighing five pounds, eleven ounces.  *Id*.  Less than a month later, the Member was arrested with $129,000 in cash waiting to board a plane.  *Id*.

The Affidavit also included a general description about how drug traffickers utilize their residences to store both the fruits and proceeds of their trade.  *Id*. at 6.

**B.    Procedural History**

On January 19, 2023, the Grand Jury returned a Fourth Superseding Indictment ("Indictment") that charged four defendants with various drug and gun crimes.  In total, Eberhardt is charged with twelve counts.  ECF No. 244.  The only co-defendant who remains to stand trial with Eberhardt is Defendant Michael Malik Garrett, who is charged with Eberhardt in Count 1—Conspiracy to

Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846. *Id*. at 2. Garrett is not charged in any other counts.

Eberhardt filed the Motion to Dismiss on November 20, 2023, seeking dismissal of Count 2—Possession of a Firearm in Furtherance of and Use, Carrying, Brandishing, and Discharge of a Firearm During and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)(A). ECF No. 358. The Government filed its opposition on December 4, 2023. ECF No. 368.

Eberhardt also filed the Suppression Motion on November 20. ECF No. 359. Although not completely clear, it appears that he challenges the probable cause for the issuance of the three warrants, and not the others. *See id*. at 1–2 (contending Eberhardt has standing to challenge the seizure of evidence from the Locations); *id*. at 10 (referring to the warrants for "a storage unit and two houses").[2] The Government filed an opposition on December 4, 2023. ECF No. 371.

Eberhardt moved to sever his case from Garrett's on December 1, 2023.[3] ECF No. 366. The Government responded on December 4, 2023. ECF No. 370.

---

[2] To the extent Eberhardt wishes to challenge *all* of the search warrants issued as part of this case around the time of the three search warrants, he should have been clearer in the Suppression Motion. He is represented by counsel, and so the Court is under no obligation to interpret his motions liberally.

[3] Eberhardt at first moved on November 20, 2023 to sever his case from that of Jason Smith. *See* ECF No. 360. But Smith pleaded guilty on January 20, 2023.

7

The Court elected to rule on the Motions without a hearing. *See* ECF No. 372.

## II. DISCUSSION

### A. The Suppression Motion

Eberhardt challenges the probable cause for the search warrants issued for the Locations. ECF No. 359 at 10. "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause . . . is a practical, nontechnical conception," *Gates*, 462 U.S. at 231 (internal quotations and citation omitted), that is evaluated by looking at the totality of the circumstances. *See id*. at 233. Indeed, probable cause may be derived from "reasonable inferences," *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (citation omitted), and is based on "practical, common-sense considerations." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1991). Even before addressing probable cause, however, "a person claiming a Fourth Amendment violation must . . . demonstrate a legitimate expectation of privacy in the place searched or the thing seized." *United States v.*

---

*See United States v. Smith*, 23-cr-00008-JAO (D. Haw.), ECF No. 8. The Court therefore DENIES that motion as moot.

*Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000) (internal quotations and citation omitted).

Eberhardt plainly has standing to challenge the search of the Kapiolani Residence: his alias was registered to it and so it's reasonable to believe that he utilized the residence either as a place to live or stay, which means he had a reasonable expectation of privacy in it. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976). And just as clearly, there was probable cause for the search of both the Kapiolani Residence and the Storage Unit.[4] First, the Affidavit offered probable cause to believe that Eberhardt was dealing drugs, and likely utilized his home and a storage unit as part of his trade. Moreover, the Affidavit laid out details about Eberhardt's return to the Kapiolani Residence following a drug transaction and how he then went to the Storage Unit and likely dropped off two bags there. All of the reasonable inferences from these facts point to a fair probability that evidence of drug trafficking would be found in both of those locations.

Less clear is whether there was probable cause to search the Ala Moana Residence. But the Court need not reach that question in any event, because

---

[4] Because the Court determines that there was probable cause for the search of the Storage Unit, it need not delve into whether Eberhardt has standing to challenge the search of the Storage Unit, which was registered to a co-conspirator. And, in any event, the Affidavit outlined ample reason to believe that Eberhardt had access to the Storage Unit.

9

Eberhardt has failed to make any showing that he had a reasonable expectation of privacy there.  The Ala Moana Residence was identified by Mareus as her address and Eberhardt has not proffered anything to cause the Court to believe that he stayed—let alone lived—at the Ala Moana Residence.  Indeed, the only mention of Eberhardt's connection to it is the statement in the Affidavit that he parked in front of the building housing the Ala Moana Residence following a drug deal.  That of course isn't enough to establish that he had a reasonable expectation of privacy in the residence.  For these reasons, the Suppression Motion is DENIED.

**B.     The Motion to Dismiss**

The Motion to Dismiss urges the Court to dismiss Count 2 pursuant to Federal Rule of Criminal Procedure 12(b), or, alternatively, to grant Eberhardt's request for a Bill of Particulars under Federal Rule of Criminal Procedure 7(f).  ECF No. 358.  The Government responds that Count 2 of the Indictment sufficiently alleges the elements of Section 924(c), and Eberhardt has not shown why he is entitled to a bill of particulars, especially given the extensive discovery produced in this case.  ECF No. 268.  The Court agrees that Count 2 is sufficiently pled, and that a bill of particulars is unnecessary to notify Eberhardt of the crimes against him.

### 1.     Sufficiency of Count 2

A defendant may challenge the sufficiency of an indictment prior to trial for failure to state an offense.  Fed. R. Crim. P. 12(b)(3)(v).  An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  It is "axiomatic" that an indictment must contain all elements of an offense, both implied and explicit, to sufficiently allege an offense.  *United States v. Davis*, 33 F.4th 1236, 1240 (9th Cir. 2022).  "An indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotations and citations omitted).  "An indictment tracking the language of the statute is usually adequate because statutes usually denounce all the elements of the crime."  *United States v. Morrison*, 536 F.2d 286, 288 (9th Cir. 1976).

The "test for sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."  *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (internal quotation omitted).  In fact, the government is "required to state only the essential facts necessary to apprise [a defendant] of the crime charged; the

government [is] not required to allege its theory of the case or list supporting evidence to prove the crime alleged." *United States v. Musacchio*, 968 F.2d 782, 787 (9th Cir. 1991) (citing *United States v. Markee,* 425 F.2d 1043, 1047–48 (9th Cir. 1970); *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir. 1982)).  Because the bar for a sufficient indictment is so low, the Ninth Circuit has characterized dismissal of an indictment as a "drastic step" and "disfavored remedy."  *United States v. Rogers*, 751 F.2d 1074, 1076 (9th Cir. 1985).

    Count 2 reads:

> On or about October 21, 2019, within the District of Hawaii, GABRIEL ANTONE EBERHARDT, aka "Stacks," knowingly possessed a firearm in furtherance of, and knowingly used and carried, a firearm during and in relation to, a drug trafficking crime for which he may be prosecuted in a court of the United States, namely distribution, attempted distribution, and possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, which firearm was brandished and discharged.
>
> All in violation of Title 18, United States Code, Section 924(c)(1)(A).

ECF No. 244 at 3.  This count plainly covers all of the elements of the charged crime, which are that the defendant: (1) committed the underlying crime (in this case, a drug trafficking crime); and (2) the defendant knowingly used, carried, or brandished a firearm during and in relation to that crime.  *See* Ninth Cir. Model Crim. Instruction 14.22.  It also outlines "the essential facts necessary to "apprise [the defendant] of the crime charged," *Musacchio*, 968 F.2d at 787, which, in this

12

case, includes the date of the crime. And, while not the issue at this stage, the Indictment's language would prevent the risk of Eberhardt being tried and convicted twice for the same crime in violation of the Double Jeopardy Clause.

For these reasons, Count 2 of the Indictment is sufficiently pled and the Motion is DENIED in that regard.

### 2. Bill of Particulars

"A bill of particulars has three purposes: to apprise the defendant of the specific charges being presented so as to minimize surprise at trial, to aid the defendant in preparing for trial, and to protect against double jeopardy." *United States v. Burt*, 765 F.2d 1364, 1367 (9th Cir. 1985) (citation omitted). Eberhardt contends that the discovery provided offers nothing more than a tangential link between him and a shooting that took place on the date charged in Count 2. *See* ECF No. 358 at 2. The Government responds that, in fact, it has produced 224 pages of discovery related to the allegation that Eberhardt was involved in a shooting—including surveillance videos—and it even described the shooting when seeking to detain Eberhardt. *See* ECF No. 368 at 6–7. In any event, "[a]cquisition of evidentiary details is not the function of a bill of particulars." *United States v. Kash*, 2015 WL 4230092 (E.D. Cal. July 10, 2015) (internal quotations and citation omitted). The Court has already determined that Eberhardt has been sufficiently apprised of the charges against him and that there are no potential

13

double jeopardy concerns. It further concludes that a bill of particulars is unnecessary where Eberhardt has been provided discovery that will allow him to prepare for trial. The request for a bill of particulars is therefore DENIED.

**C.     The Motion to Sever**

Eberhardt moves to sever his trial from that of the remaining co-defendant, Garrett, arguing that "a joint trial will prejudice Mr. Eberhardt's defense and impede his right to a fair trial." ECF No. 366 at 2. He further cites to *Bruton v. United States*, 391 U.S. 123 (1968), saying that the Government will likely "offer into evidence statements by [his] co-defendants" and that doing so will violate his right to confrontation "because those witnesses have the right to not testify." *Id*. at 3. The Government responds that Eberhardt will face no prejudice from a joint trial with the less culpable Garrett and that Garrett didn't make any statements to law enforcement that would implicate *Bruton*. ECF No. 370. The Court concludes that severance is unwarranted.

Under Federal Rule of Criminal Procedure 8(b), "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. (8)(b). Still, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . , the court may order

separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed R. Crim. P. 14(a).  The test for whether the Court should sever a defendant is "whether a joint trial [is] so manifestly prejudicial as to require the trial judge to exercise [her] discretion in but one way, by ordering a separate trial."  *United States v. Patterson*, 819 F.2d 1495, 1501 (9th Cir. 1987).  Generally, however, "defendants jointly charged are to be jointly tried."  *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Most important in evaluating whether a defendant is prejudiced by a joint trial is "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant;" and "(2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used."  *United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005) (listing factors to consider).  For that reason, a joint trial is especially appropriate where the co-defendants are charged with conspiracy, as "the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials."  *Id.* at 1242.  But even if risk of prejudice exists, the Supreme Court has held that appropriate limiting instructions cure that risk, *see Zafiro*, 506 U.S. at 540–41, and a "defendant seeking severance based on

15

the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998) (quotation omitted).

Eberhardt has failed to show what spillover effect he will suffer if jointly tried with Garrett. Indeed, the Government proffers that "none of the evidence admissible against Codefendant Garrett is inadmissible against Defendant Eberhardt, who led the conspiracy charged against both men." ECF No. 370 at 5. The bare-bones Motion to Sever does not offer any reasons why it is that Eberhardt would be prejudiced from a joint trial with Garrett, and the Court will not try to imagine any. In the same vein, the fact that Garrett did not make any statements to law enforcement does not put Eberhardt in a *Bruton* bind: "[u]nder *Bruton* and its progeny, the admission of a statement by a non-testifying co-defendant violates the Confrontation Clause when that statement facially, expressly, clearly, or powerfully implicates the defendant." *United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007) (internal quotations and citation omitted). Moreover, "Bruton applies only where co-defendants are tried jointly, and is inapplicable when the non-testifying codefendant is severed out." *Id*. So, assuming Eberhardt is concerned about statements from Garrett violating *Bruton*, his concern is extinguished by the lack of any such statements. To the extent he fears that any co-defendant's statements other than Garrett's will be admitted at trial, his reliance

16

on *Bruton* is misplaced. There may be other vehicles for the exclusion of such statements, but *Bruton* is not one of them.

For these reasons, the Motion to Sever is DENIED.

### III.   CONCLUSION

For the foregoing reasons, the Motions are DENIED.

IT IS SO ORDERED.

Dated: Honolulu, Hawaiʻi, December 14, 2023.

Jill A. Otake
United States District Judge

*United States v. Gabriel Antone Eberhardt*, CR No. 21-00101 JAO, ORDER DENYING DEFENDANT EBERHARDT'S VARIOUS MOTIONS (ECF NOS. 358, 359, 360, 366)